## Lee K. Madden, et al. v. Omega Optical, Inc.

[683 A.2d 386]

No. 94-654

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 12, 1996

*Thomas W. Costello, John C. Mabie* and *Joel T. Faxon* of *Thomas W. Costello, P.C.*, Brattleboro, for Plaintiffs-Appellants.

*J. Scott Cameron* and *David R. Putnam* of *Paterson & Walke, P.C.*, Montpelier, for Defendant-Appellee.

**Allen, C.J.** Plaintiffs appeal an order granting defendant summary judgment on their claims of breach of contract, wrongful discharge in violation of public policy, and promissory estoppel. We affirm.

This lawsuit arose when defendant, Omega Optical, Inc., instituted a new personnel policy requiring all its employees to sign a Confidentiality, Disclosure, and Noncompetition Agreement (Agreement). The noncompetition portion of the Agreement prohibits an employee from participating in the thin-film, optical-coating business anywhere in the United States for a period of six months following termination of employment with defendant. Initially, only employees hired after January 1, 1991 were required to sign the Agreement. In August of

1991, after several employees quit to start a competing corporation, defendant changed the policy to require all employees to sign the Agreement as a condition of employment. Plaintiffs, five Omega employees, refused to sign the Agreement and were terminated as a result.

At the time plaintiffs were fired in August of 1991, they had been employed at Omega for between one and six years. When plaintiffs accepted employment with defendant, an employee handbook did not exist. In early 1990, however, defendant distributed a handbook to all employees. The handbook contained a review procedure, which read, "[D]ismissal from Omega/Omicron will be considered after two unsatisfactory reviews." The handbook also contained a disclaimer, which read, "[N]othing in this handbook or any other policy or communication changes the fact that employment is at-will for an indefinite period . . . ."

Plaintiffs alleged that even though they may have been hired as at-will employees, defendant unilaterally modified their at-will status through its employee handbook and by creating a company-wide practice of not firing employees without just cause. Plaintiffs argued that their termination for refusing to sign the noncompetition agreement did not constitute just cause, and therefore they were wrongfully discharged. Defendant filed a motion for summary judgment, and the trial court granted it, concluding that plaintiffs' evidence was insufficient to establish genuine issues of material fact.

## I.

In reviewing a grant of summary judgment, this Court applies the same standard as the trial court. *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 17, 665 A.2d 580, 582 (1995). Summary judgment should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 17-18, 665 A.2d at 582. "Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Id.* at 18, 665 A.2d at 583.

Plaintiffs argue that an issue of material fact exists regarding whether they had a contractual right to be terminated for just cause.

As employees hired for an indefinite period, plaintiffs are presumed to have been at-will employees. *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 462, 652 A.2d 466, 470-71 (1993). Plaintiffs can overcome this presumption by presenting evidence that defendant unilaterally modified their at-will status. *Id.*; see *Ross*, 164 Vt. at 19, 665 A.2d at 584 ("An employer may limit its discretion to terminate an employee at will by instituting company-wide personnel policies."). Therefore, we must determine whether plaintiffs have met their summary judgment burden to show that a triable issue of fact exists regarding the issue of unilateral modification of their at-will status. *Ross*, 164 Vt. at 17-18, 665 A.2d at 582-83; see also *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (summary judgment appropriate where, after adequate time for discovery, party with burden of proof at trial fails to make showing sufficient to establish existence of elements essential to case).

Plaintiffs first argue that the employee handbook is evidence that defendant unilaterally modified their at-will status such that they could be terminated only for just cause. In defendant's seventy-page employee manual, the only reference to dismissal is found in the "Review Procedure" section, which reads:

> The purpose of the review is to check individual job performance and work habits, define and adjust job descriptions, provide information from fellow employees, set short and long-term goals, and clarify expectations for the future. . . .
> . . . .
> . . . Dismissal from Omega/Omicron will be considered after two unsatisfactory reviews.

Plaintiffs argue that the above statement creates a factual dispute regarding whether their at-will status was modified such that they could be terminated only for just cause. We disagree. Even if we assume that the above statement modified plaintiffs' at-will status, under no interpretation does the statement limit the causes for termination. At best, the statement in the handbook creates a disciplinary procedure for one cause — poor job performance — rather than limiting the causes for termination. As the trial court noted, "there is no specific statement [in the handbook] that limits grounds for dismissal to unsatisfactory performance . . . [and] no statement that non-compliance with a workplace requirement would be an impermissible ground for termination." Therefore, even if the handbook modified plaintiffs' at-will status with respect to unsatisfac-

tory performance by creating a disciplinary procedure, an issue we do not decide, plaintiffs could still be fired for reasons other than poor performance.[1] See *Foote v. Simmonds Precision Products Co.*, 158 Vt. 566, 571, 613 A.2d 1277, 1280 (1992) ("Even with modifications, employees for an indefinite term are still considered at-will employees, who may be discharged for any number of reasons not prohibited by the modifications.").

Second, plaintiffs argue that their affidavit statements regarding alleged oral and written representations made to them by defendant are sufficient to defeat summary judgment on the issue of unilateral modification of their at-will status. In affidavits submitted in response to defendant's summary judgment motion, plaintiffs each made identical statements that defendant "regularly made representations to [them], through the review process, the evaluations, the employee handbook, conversations, memoranda, etc., that [their] employment would be terminated only from [sic] unsatisfactory performance." Even after conducting discovery, however, plaintiffs failed to provide specific information as to who made the alleged representations and when or where they were made, or produce any of the evaluations or memoranda in which defendant allegedly made representations to plaintiffs.

Plaintiffs' affidavit statements regarding written representations are to be disregarded in determining whether they made a sufficient showing to defeat summary judgment because the statements would be inadmissible under the best evidence rule. V.R.C.P. 56(e) (affidavits shall set forth facts as would be admissible in evidence); *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 45, 572 A.2d 1382, 1388 (1990). Plaintiffs' statements about alleged representations made by defendant in evaluations and memoranda are inadmissible under the best evidence rule, V.R.E. 1003, unless the documents fall within an exception under V.R.E. 1004. Plaintiffs have offered no evidence to explain the absence of the documents that they allege contain these representations by the defendant.

Plaintiffs' affidavit statements regarding oral representations made in the review process and in conversations are insufficient as a matter of law to show unilateral modification of their at-will employment status. As we stated in *Ross*, "Only those policies which are

---

[1] Defendant argues that the handbook disclaimer precludes modification of employee at-will status by the handbook. We need not, and do not, reach this issue.

definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself will be enforced." *Ross*, 164 Vt. at 20, 665 A.2d at 584. Evidence of defendant's intent to bind itself would include, at the very least, the identity of the persons who made the oral representations to plaintiffs. Only with such evidence could the agency relationship between the persons making the representations and defendant be determined.

■ Finally, plaintiffs argue that statements made by defendant's president during his deposition create a genuine issue of material fact as to the existence of a company-wide policy limiting termination to just cause.[2] Because the president's statements are responses to either hypothetical questions or questions testing his knowledge of legal definitions, they do not meet the requirements set out in *Ross*. *Id.* The president's deposition statements are not "definitive" in form. In addition, even if the president believed in the existence of a company-wide policy of terminating employees only for cause, plaintiffs have not presented any evidence tending to show that the president ever communicated that belief to the employees. Therefore, because plaintiffs failed to show the existence of a triable question of fact on the issue of unilateral modification of their at-will status, the court did not err in granting summary judgment on plaintiffs' breach of contract claim.

■ Plaintiffs' remaining claims of illegal contract modification and violation of the covenant of good faith and fair dealing also fail because plaintiffs have not established through the handbook or other evidence that their at-will status was modified such that they could be terminated only for just cause.

Plaintiffs argue that the Confidentiality, Disclosure, and Noncompetition Agreement was unenforceable and lacked consideration and, as a result, was an illegal modification of a contract.

---

[2] Plaintiffs point to one exchange in particular that they argue constitutes an admission of a company-wide policy:

Q: If, in fact, the person, an employee of the Company executed the Agreement as demanded by you on August 12 of '91 that person could not have been summarily fired the following day; isn't that correct?

A: The conditions that were in existence on that day would not have allowed termination.

Q: Because he could not have been fired without just cause?

A: Correct.

According to plaintiffs, because they were fired for refusing to sign an illegal contract modification, they were not fired for just cause. This contention, however, relies on the premise that plaintiffs' at-will status had been modified to require just cause for termination. As discussed above, plaintiffs failed to establish that their at-will employment status was modified to require just cause, and as at-will employees they could be fired without cause. *Sherman v. Rutland Hosp., Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985) ("[A]n 'at-will' agreement [is] terminable at any time, for any reason or for none at all."). Therefore, the trial court properly granted summary judgment on plaintiffs' illegal contract modification claim.

Plaintiffs also claimed that defendant violated the covenant of good faith and fair dealing when it fired plaintiffs for refusing to sign an unenforceable agreement. Plaintiffs' good faith and fair dealing claim, however, is clearly foreclosed by *Ross*. In *Ross*, we stated that "[t]o imply a covenant as to tenure in an unmodified at-will contract irreconcilably conflicts with the employment-at-will doctrine." *Ross*, 164 Vt. at 23, 665 A.2d at 586. Here, because plaintiffs have failed to produce any evidence tending to show that their at-will status was modified with respect to cause, their good faith and fair dealing claim also fails.

## II.

Plaintiffs next argue that their termination for refusing to sign the Agreement constituted a wrongful discharge in violation of public policy. We have held that an at-will employee can maintain a separate, independent claim for wrongful discharge in violation of public policy. *Payne v. Rozendaal*, 147 Vt. 488, 491, 520 A.2d 586, 588 (1986). Plaintiffs argue that the issue of whether their termination violates public policy depends on enforceability of the Agreement. We hold that, regardless of whether the Agreement was enforceable, plaintiffs' termination for refusing to sign it did not violate public policy.

In *Payne*, the plaintiffs were at-will employees who were terminated solely because of their age. Although there was no state statute prohibiting age discrimination, we held that "the discharge of an employee solely on the basis of age is a practice so contrary to our society's concern for providing equity and justice that there is a clear and compelling public policy against it." *Id.* at 494, 520 A.2d at 589. The age discrimination in *Payne* and defendant's conduct here are not comparable. The termination of an employee who refused to sign an

allegedly unenforceable noncompetition agreement is not so contrary to our society's concern for providing equity and justice that it violates clear and compelling public policy and is not a "'course of conduct [that] is cruel or shocking to the average man's conception of justice.'" *Id.* at 493, 520 A.2d at 588 (quoting *Pittsburgh, Cin., Chi. & St. Louis Ry. v. Kinney*, 115 N.E. 505, 507 (Ohio 1916)).[3] If the Agreement is unenforceable, plaintiffs took no risk by signing it because they could later challenge the Agreement when defendant sought to enforce it. And if plaintiffs refused to sign the Agreement because of its potential impact on their careers if enforceable, then defendant terminated them for protecting a "private or proprietary" interest that falls outside the public policy exception to the at-will doctrine. *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025, 1034 (Ariz. 1985); see also *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 513-14 (N.J. 1980) (termination of doctor for refusal to perform research on "controversial" drug which contravened her personal morals not contrary to clear mandate of public policy). Defendant is entitled to judgment as a matter of law on plaintiffs' claim of wrongful discharge in violation of public policy.

## III.

█ Finally, plaintiffs argue that the court erred by granting summary judgment on their promissory estoppel claim. We have held that the doctrine of promissory estoppel may modify an employment contract that is otherwise terminable at will. *Foote*, 158 Vt. at 567, 613 A.2d at 1278. As we stated in *Foote*, promissory estoppel is "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance.'" *Id.* at 573, 613 A.2d at 1281 (quoting Restatement (Second) of Contracts § 90(1) (1981)). Here, plaintiffs' promissory estoppel claim fails because they have not made "a showing sufficient to establish the existence of an element" of their claim. *Poplaski*, 152 Vt. at 254-55, 565 A.2d at 1329.

In *Foote*, the employee handbook explicitly stated that employees who followed the grievance procedure would not be "criticized or penalized in any way." *Foote*, 158 Vt. at 568, 613 A.2d at 1278. The plaintiff followed the grievance procedure in the handbook but was

---

[3] Plaintiffs argue that a "jury could find that [defendant's] activities in this case fit the definition of shocking to the average man's conception of justice." Whether an activity violates public policy is not an issue of fact for a jury to determine.

fired nonetheless. As we noted in *Foote,* "[t]he maker of such a statement in an employee handbook should expect action or forbearance on the part of the promisee as a result of the statement." *Id.* at 573, 613 A.2d at 1281. Here, the handbook stated that termination would be considered after two unsatisfactory performance reviews. Plaintiffs contend that they detrimentally relied upon the statement when they refused to sign the agreement. Plaintiffs erroneously interpreted the statement to mean that they could be terminated only for just cause. Unlike *Foote,* defendant here would not have reasonably expected that plaintiffs would misinterpret the handbook and that the handbook would thereby induce action or forbearance by plaintiffs. The trial court did not err by granting defendant's motion for summary judgment.

*Affirmed.*