STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re O'Neil Sand & Gravel | } | |
|    Act 250 Amendment Application | } | Docket No. 48-2-07 Vtec |
|       (Appeal of O'Neil Sand & Gravel, LLC) | } | |
| | } | |

Decision and Order on Motion to Reconsider or to Alter

Appellant-Applicant O'Neil Sand & Gravel, LLC (Applicant) appealed from a decision of the District 2 Environmental Commission denying its application to amend an Act 250 permit for an aggregate extraction project located on Applicant's 139-acre property in the Town of Chester.

Appellant-Applicant is represented by Lawrence G. Slason, Esq. Cross-Appellants Janet Colbert, Melanie McGuirk, Helen McGuirk, Alice Forlie, Hans Forlie, Heather Chase, Bruce Chase, Jonathan Otto, Carrol Otto, Rachel Root, Valerie Kratky, and John Kratky (Neighbors) are represented by David L. Grayck, Esq. Intervenor Green Mountain Union High School (GMUHS) is represented by Geoffrey H. Hand, Esq. The Town is represented by James F. Carroll, Esq. Interested Party Paul B. Dexter, Esq., has appeared and represents himself.

Act 250 Permit #2S0214, which was issued in 1974, applied to a 232-acre parcel of property owned by Applicant's predecessors-in-interest; Applicant purchased 139 acres of that larger parcel. In 2001, Applicant obtained an Act 250 permit amendment, Act 250 Permit #2S0214-6 (the 2001 Act 250 Permit), which authorized an extraction project on an eighteen-acre portion of Applicant's 139-acre property, adjacent to the Green Mountain Union High School property. The application before the Court in the present

1

case seeks to further amend the 2001 Act 250 Permit to allow an additional extraction project on an fifteen-acre portion of Applicant's property, also adjacent to the Green Mountain Union High School property, and adjacent to the eighteen-acre site.

On September 11, 2009, the Court issued a decision and order addressing the parties' cross-motions for summary judgment (the Summary Judgment Decision). In re O'Neil Sand & Gravel Act 250 Amendment Application, No. 48-2-07 (Vt. Envtl. Ct. Sept. 11, 2009) (Wright, J.). The Summary Judgment Decision interpreted several of the forty-six conditions of the 2001 Act 250 Permit in connection with the new project proposal. In the Summary Judgment Decision, in regard to Condition 12 of the 2001 Act 250 Permit, the Court determined that Condition 12 applied to the entire 139-acre parcel, therefore requiring either that Condition 12 be amended to allow for the proposed operation or that the proposed operation fully comply with that condition as initially imposed. Id. at 6. The Court then analyzed Condition 12 under Act 250 Rule 34(e), which governs whether a permit condition may be amended, and determined that Condition 12 was barred from amendment. Id. at 15.

The parties' cross-motions for summary judgment also addressed whether the proposed project would be able to comply with Condition 12 of the 2001 Act 250 Permit. However, the Court did not proceed to rule on the permit on summary judgment, ruling instead that material facts were in dispute as to whether the proposed operation would be able to operate within the requirements of Condition 12, and that material facts were in dispute as to whether Condition 12 applies to noise produced by blasting activities at the proposed project. Id. at 6, 15.[1]

On September 24, 2009, GMUHS moved for reconsideration of or to alter the Summary Judgment Decision "on the narrow issue of whether there is a dispute of material fact concerning the Project's ability to comply with Condition 12." GMUHS

---

[1] The Summary Judgment Decision also addressed several other conditions imposed in the 2001 Act 250 permit, which are not at issue in the present motion.

Motion, at 1.[2]  In its motion, GMUHS requests the Court to reconsider its conclusion that material facts are disputed as to whether the proposed operation can satisfy Condition 12.  GMUHS requests the Court instead to enter summary judgment in its favor, arguing that the undisputed evidence demonstrates that the proposed project cannot satisfy Condition 12, regardless of whether the condition applies to the blasting aspect of the proposed operation.  GMUHS therefore requests the Court to deny Appellant's pending Act 250 amendment application, as the Court already determined in the Summary Judgment Decision that Condition 12 is barred from amendment, and the proposed project cannot meet the requirements of Condition 12 absent such an amendment.

Standards Applicable to a Motion to Reconsider or to Amend a Judgment

Vermont Rule of Civil Procedure 59(e), which is substantially identical to Federal Rule of Civil Procedure 59(e), "gives the court broad power to alter or amend a judgment on motion within ten days after entry thereof."  Drumheller v. Drumheller, 2009 VT 23, ¶ 28 (citing V.R.C.P. 59, Reporter's Notes).  Rule 59(e) is a codification of the trial court's "inherent power to open and correct, modify, or vacate its judgments."  Id. (citing West v. West, 131 Vt. 621, 623 (1973)).  Although there is no specific authorization in the civil rules or in the rules for environmental court proceedings for a motion to "reconsider" a decision, such motions are treated as motions to amend or alter a decision under Rule 59(e).  Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 6, 2007) (Wright, J.); see also Sisters & Brothers Inv. Group. v. Vt. Nat. Bank, 172 Vt. 539, 541 (2001) (stating that a motion to reconsider is "for all intents

---

[2]  At a telephone conference on October 5, 2009, at which the Town did not participate, Attorney Grayck, on behalf of the Neighbors, and Attorney Dexter joined in the GMUHS motion.  Applicant was given the opportunity to file a response to the motion, but declined to do so.

3

and purposes, a motion to alter or amend the judgment" under Rule 59(e)).

A Rule 59(e) motion "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588 (1996) (citing In re Kostenblatt, 161 Vt. 292, 302 (1994)). More specifically, the limited functions of a motion for reconsideration are "to correct manifest errors of law or fact on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.0 (2d ed. 1995)); see also Appeal of Van Nostrand, Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 11, 2006) (Durkin, J.).

On the other hand, Rule 59(e) should not be used to "relitigate old matters" or "raise arguments or present evidence that could have been raised prior to entry of the judgment." Appeal of Van Nostrand, Nos. 209-11-04 Vtec & 101-5-05 Vtec, slip op. at 4. Disagreement between the moving parties, or disagreement with the court's decision, is not grounds for reconsideration. In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.). A motion to reconsider is considered "an 'extraordinary' remedy that should be used 'sparingly'," In re Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 3–4 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.1); its disposition "is committed to the court's sound discretion." Rubin, 164 Vt. at 588 (citing Kostenblatt, 161 Vt. at 302).

The Court has thoroughly reviewed the evidence supplied on summary judgment, as well as the parties' memoranda on summary judgment, and concludes that, applying the legal conclusions of the Summary Judgment Decision to the undisputed facts, including those facts not countered by Applicant, summary judgment

4

must be entered denying the permit amendment.

Applicability of Condition 12 to GMUHS Trail Network

Condition 12 of Applicant's 2001 Act 250 Permit states in full:

In order to protect the public investment in Green Mountain Union High School, noise levels from all aspects of operations occurring on the site shall be no louder than barely audible at the school buildings and areas used for outdoor recreation and education.

2001 Act 250 Permit, at 3, ¶ 12.   The District Commission's decision issuing the 2001 Act 250 Permit (the 2001 District Commission Decision) defined the term "barely audible" to be that "noise which is no louder than the lowest background level noise which presently occurs when students are in classes."   2001 District Commission Decision, at 16.

In the Summary Judgment Decision, the Court concluded that the noise limitation in Condition 12 must be met on the GMUHS trail network, as well as at the school building and recreation fields, because the Court determined that the trail network is an area used for outdoor recreation and education.   In re O'Neil Sand & Gravel, No. 48-2-07, slip op. at 14.   In making its determination that Condition 12 applied to the trail network, the Court relied on the plain language of Condition 12, interpreted in the context of the District Commission's decision granting the permit.

In interpreting Act 250 permit conditions, the Court applies "normal statutory construction techniques."   Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters., 163 Vt. 476, 481, 483 (1995).   The Court's goal is "to implement the intent of the draftspersons," which it does by "rely[ing] on the plain meaning of the words because [the Court] presume[s] they show the underlying intent."   Id. (citing Conn. v. Middlebury Union High Sch., 162 Vt. 498, 501 (1994)); see also In re Williston Inn Group, 2008 VT 47, ¶ 14, 183 Vt. 621 (The Court's "overall goal is to discern the intent of the drafters . . . by reference to the plain meaning of the regulatory language," when

5

possible. (internal citations omitted)). However, the language used by the drafter must be considered in the context of the permit as a whole. Handy Family Enters., 163 Vt. at 483 (stating that courts "should view the word[s] in the context used in the permits" (citing Veterans of Foreign Wars v. City of Steamboat Springs, 575 P.2d 835, 839 (Colo. 1978)). The Court must also keep in mind that "permit conditions 'must be expressed with sufficient clarity to give notice of the limitations on the use of the land,'" id. (quoting In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978)), and that "any uncertainty [regarding the condition] must be decided in favor of the property owner." Id. (citing In re Vitale, 151 Vt. 580, 584 (1989)).

In its decision granting the 2001 Act 250 Permit, the District Commission imposed Condition 12 as a result of its analysis, under Act 250 Criterion 9(K) (Public Investment), see 10 V.S.A. § 6086(a)(9)(K), of the aggregate extraction operation that was being proposed in 2001. 2001 District Commission Decision, at 15–17. The plain language of Condition 12 required the "barely audible" noise standard to be met not only at the school building, but also to be met at areas on the school's property used for outdoor recreation and at outdoor areas on the school's property used for education. The District Commission did not limit the applicability of Condition 12 to areas on the school property that were then being used for education or for outdoor recreation in 2001, nor did it limit the applicability of Condition 12 to any specific areas close to the school building.

In analyzing the public investment by the Town in the school property, the District Commission emphasized the importance of the entire 162-acre school property, not only to the educational functions of the school, but also in terms of its availability for outdoor recreation and education for the public, as well as the students. The District Commission stated that, "[i]n this case, the Commission must ensure that noise from the project does not materially interfere with the efficient function of the school and the use and enjoyment of the school by the students and the public." District Commission

6

Decision, at 16. Its analysis of "the importance of the 162 acre school site for athletic and outdoor education programs" was based upon the Chester Town Plan's characterization that the school's "162 acre site makes it possible to create a variety of athletic and outdoor education programs which add measurably to the community's attractiveness and desirability as a place to work and live." Id. at 16.

The District Commission Decision also contemplated the possibility that the Town or the school would make changes on the 162-acre school property in the future, which could require Applicant to accommodate those changes to ensure that Condition 12 would nevertheless continue to be met in the future. For example, the District Commission found that the "forested buffer of trees between the project and the school is on the school property." Id. at 10. Based on this finding, the Commission specifically noted in imposing Condition 12

> that the Applicants have not provided a buffer to the Green Mountain Union High School property and are relying, in part, upon the existing forested land on the high school's property . . . for sound reduction. The Applicants, in representing that the project will be, at worst, "barely audible" at the high school, must also realize that even if adjoining landowners [including the school] remove part of that buffer, the project will still need to meet the representations made with respect to noise.

Id. at 12.

The plain language of Condition 12—in light of the District Commission's discussion of the public investment in the school property for outdoor recreation as well as for education, and to serve the public as well as the high school student population— shows that the District Commission intended Condition 12 to apply to the whole of the school's property, even if changes were made to that property in the future.[3]

---

[3] Indeed, the 2001 District Commission Decision warned Applicant that, in the future, "[i]f, however, noise is more than 'barely audible' and thus has the potential to interfere with the enjoyment of and functions of the school and its facilities, including outdoor education and athletic programs, the project will not be in conformance with Criterion

<u>Relative Timing of Development of Trail Network on School Property</u>

On summary judgment, Applicant also argued that, even if Condition 12 applies to the outdoor recreation trails on the school property, it does not apply to the trail closest to the proposed project site or the to the large glacial boulder near the project site,[4] asserting that that portion of the trail network was not in existence when the District Commission approved the 2001 Act 250 Permit. As discussed above, the existence of that portion of the outdoor recreation trails in 2001 is not material to this appeal, even if it is a disputed fact, because the Court has already ruled that the District Commission intended Condition 12 to apply to future recreational and educational uses on the 162-acre school property. In any event, GMUHS and Neighbors came forward with evidence on summary judgment supporting their position that the disputed portion of the trail network did exist at the time of the 2001 District Commission Decision, and Applicant did not respond with any evidence to controvert it, so that Applicant cannot prevail on summary judgment on that issue.

When parties file cross-motions for summary judgment, as was done in the present case, each motion is considered in turn, and each party is "entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion [is] being judged." <u>Bixler v. Bullard</u>, 172 Vt. 53, 57 (2001) (citing <u>Toys, Inc. v. F.M. Burlington Co.</u>, 155 Vt. 44, 48 (1990)). Moving parties that do not bear the burden of persuasion at trial

9(K) Public Investments and the permit . . . will be subject to revocation." 2001 District Commission Decision, at 16.

[4] The large glacial boulder, located "323 feet from the blast zone of the proposed quarry," is also referred to as a "glacial erratic," which is a "piece of rock that deviates from the size and mineralogical composition of rock native to the area in which it rests." Caduto Aff. ¶ 33 (Sept. 24, 2008). The term "erratic" in the name "is based on the errant location of these boulders," which are "carried to [their] current location[s] by glacial ice, often over hundreds of kilometers and, in this case, 14,000 years." <u>Id</u>. The glacial boulder, or glacial erratic, on the school property "is used for educational purposes for both GMUHS students and the public." <u>Id</u>.

8

may satisfy their burden of production on summary judgment by supporting their motions with credible evidence or by "showing the court that there is an absence of evidence in the record to support the nonmoving party's case." Madden v. Omega Optical, Inc., 165 Vt. 306, 309 (1996) (citing Ross v. Times Mirror, Inc., 164 Vt. 13, 18 (1995)). If the moving party does so, "the burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." Id. In order for the nonmoving party to meet this burden, it must "submit[] credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." Endres v. Endres, 185 Vt. 63, 67 (2008) (citing V.R.C.P. 56(e)).

In the present case, GMUHS and Neighbors presented credible evidence that portions of the trail network near the proposed extraction site existed and were in use at the time the 2001 Act 250 Permit was issued. See Caduto Aff. ¶ 4 (Mar. 16, 2009) (refuting the assertion that "sections of the forest trail closest to the proposed extraction area . . . did not exist when the original project was approved [in 2001] or when RSG conducted its noise analysis" on the GMUHS property); id. ¶ 6 ("Most of the trails have been there far longer than [Applicant's] 2001 gravel pit permit . . . ."); id. ¶ 8 (stating that the "trail along the perimeter of the high school property . . . was already in place and was in existence before OSG's 2001 gravel pit permit . . . ."); Neighbors' Ex. 1, Site Map of GMUHS Forest Trails (indicating the preexisting portions of the GMUHS trail network, including portions located near the proposed extraction site); Forlie Aff. ¶¶ 1–3 (stating that, as a member of the GMUHS cross-country and field teams in the late 1980s and 1990, he regularly made use of the trail system described as a "fitness loop" with "fitness stations").

By contrast, there is an "absence of evidence in the record to support" Applicant's assertion that the trails and the glacial boulder either did not exist or were not used for educational or recreational purposes at the time the 2001 Act 250 Permit was issued. Madden, 165 Vt. at 309. Applicant did not present "any credible

9

documentary evidence or affidavits sufficient to rebut the evidence of the moving party." Endres, 185 Vt. at 67. Although Applicant stated that "sections of the forest trail closest to the proposed extraction site . . . did not exist when the original project was approved or when RSG conducted its noise analysis," Applicant's Consolidated Response, at 12 (Feb. 2, 2009), Applicant cited to no statement of fact, affidavit, or piece of documentary evidence before the Court to support this assertion.

Similarly, although Applicant noted that the Town's Forest Trail Committee and its trail improvement project were not in existence until after Applicant submitted its Act 250 amendment application in 2006, see, e.g., Applicant's Consolidated Response, at 13, Applicant did not link that fact to evidence showing that the disputed section of the trail network did not exist in 2001. See Mello v. Cohen, 168 Vt. 639, 641 (1998) ("[T]o defend against a summary judgment motion, a [party] cannot rely on conclusory allegations or mere conjecture."); Progressive Ins. Co. v. Wasoka, 2005 VT 76, ¶ 25, 178 Vt. 337 ("[M]ere allegations of counsel unsupported by documentary evidence are not enough to create a genuine issue of material fact." (citing Foster & Gridley v. Winner, 169 Vt. 621, 624 (1999) (mem.))). Accordingly, Applicant did not meet its burden of refuting the evidence submitted by GMUHS and Neighbors that the trail and glacial boulder existed in educational and/or outdoor recreational use as of the issuance of the 2001 Act 250 Permit.

Proposed Operation's Compliance with Condition 12

In the Summary Judgment Decision, after determining that the trail system and other outdoor areas on the school property were protected by Condition 12, and that Condition 12 could not be amended, the Court determined that material facts remained in dispute regarding the Project's ability to comply with that standard. In re O'Neil

<u>Sand & Gravel</u>, No. 48-2-07, slip op. at 6, 15. [5]

The Court's conclusion that facts remained in dispute was based largely on the uncertainty embodied in the word "likely" in Applicant's several statements that Applicant "acknowledges that <u>it is likely that</u> the operational noise will exceed existing background level noise at sections of the forest trail closest to the GMUHS boundary and proposed project." Applicant's Consolidated Response, at 3 (emphasis added); see also Applicant's Response to GMUHS's Statement of Additional Undisputed Facts, at 15 (Feb. 2, 2009) (stating that Applicant "[a]dmit[s] it is likely that operational noise will exceed background noise level at the sections of the trail near the large boulder closest to the GMUHS boundary and proposed project"). Without an admission that the proposed operation would actually violate the standard imposed by Condition 12 at the sections of the forest trail closest to the GMUHS boundary and to the proposed project, the Court concluded that material facts were in dispute and that a trial would be necessary.

In its present motion to reconsider, GMUHS points out that, aside from the phrasing of Applicant's admissions, GMUHS' and Neighbors' motions for summary judgment had come forward with evidence that the operational noise produced by the proposed project will not meet the Condition 12 standard at the glacial boulder or at the trail near the boulder. See, e.g., Tocci Aff. ¶ 15, 17 (Sept. 24, 2008) ("[I]t is our opinion that quarry equipment and activity would be audible along 80% of the trail system length," in particular at the "glacial erratic" location on the trail that is closest to the proposed operation.); <u>id</u>. ¶ 17 (stating that Condition 12 would be met at the GMUHS building under most conditions, but that "sound levels at the glacial erratic and parts of

<hr>

[5] Applicant had originally stated on summary judgment that it was "prepared to operate its project within [the] noise limitations" in Condition 12. Applicant's Motion for Partial Summary Judgment, at 8 (June 23, 2008). However, this statement rested on the mistaken premise that the noise limitation of Condition 12 did not apply to the trail network.

the GMUHS trail system will significantly exceed the existing measured background sound levels"). GMUHS further points out that Applicant did not submit any of its own credible evidence to refute GMUHS' and Neighbors' evidence. The evidence presented by GMUHS and Neighbors, as well as the absence of credible evidence presented by Applicant, was enough to shift the burden to Applicant to show that there were material disputed facts as to whether the operational noise of the project will violate Condition 12 on the trail network. See Madden, 165 Vt. at 309 (stating that if the moving party meets its burden of production on summary judgment, "the burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact"). Applicant did not do so.

Applicant conceded "that [its] noise consultant did not take background level measurements on the forest trail," Applicant's Response to Neighbors' Statement of Undisputed Material Facts, at 37 (Feb. 2, 2009), and "did not analyze project operational noise on the school's trail network." Applicant's Response to GMUHS's Statement of Additional Undisputed Facts, at 16. Therefore, Applicant's noise study does not serve as a basis to refute GMUHS' and Neighbors' evidence that the operational noise from the proposed operation will violate Condition 12 on the trail network. Although Applicant did answer "disputed" to some of GMUHS' and Neighbors' statements of fact regarding the level of noise on the trail network, see, e.g., Applicant's Response to GMUHS's Statement of Additional Undisputed Facts, at 17–18 (responding "disputed" to paragraphs 53 and 56, among others), Applicant did not refer to any supporting affidavits or documentary evidence to support its "mere . . . denials." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28 (1999).

Accordingly, because Applicant failed to meet its burden of presenting supporting affidavits or documentary evidence to refute GMUHS' and Neighbors' evidence that the proposed operation would violate Condition 12 on the trail network, there is no triable issue of fact as to whether the operation of the proposed project is

12

capable of complying with Condition 12 at the trail network, including at the glacial boulder. Therefore, summary judgment must be issued in favor of GMUHS and Neighbors on this issue.

Blasting

Although disputed facts may remain as to whether Condition 12 was intended to apply to blasting noise at all, or whether or when it was intended to apply to blasting noise, this issue appears to be moot, due to the Court's conclusion that the project as proposed cannot meet Condition 12 during operation.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that GMUHS's motion for reconsideration or to amend the Summary Judgment Decision is GRANTED, as follows. In addition to the issues concluded in that decision, summary judgment is also hereby entered that the proposed project's operational noise, exclusive of any noise issues related to blasting, cannot meet the noise standard imposed by Condition 12 of the 2001 Act 250 Permit, and that therefore the application must be denied, concluding this appeal. GMUHS shall prepare a proposed judgment order and circulate it prior to the scheduled telephone conference.

A telephone conference has been scheduled (see enclosed notice) to discuss how or whether the parties wish to proceed on the related municipal appeal, Docket No. 226-9-06 Vtec, which the parties had agreed should await the decision in this Act 250 appeal.

Done at Berlin, Vermont, this 23rd day of February, 2010.

_____
                    Merideth Wright
                    Environmental Judge