`NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 7

No. 2014-432

In re Election Petitions

Supreme Court

On Appeal from
Labor Relations Board

May Term, 2015

Richard W. Park, Chair

Alfred Gordon O'Connell of Pyle Rome Ehrenberg PC, Boston, Massachusetts, and
  Timothy Belcher and Justin St. James, Vermont State Employees' Association, Montpelier,
  for Appellants.

Joseph A. Farnham and Andrew Bolduc of McNeil, Leddy & Sheahan, P.C., Burlington, for
  Appellees State's Attorneys of Franklin, Orange, Windsor, Addison and Windham Counties.

John L. Franco, Jr., Burlington, for Appellee Chittenden County State's Attorney's Office.

PRESENT: Reiber, C.J.,[1] Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** The Vermont State Employees' Association (VSEA) filed eight petitions with the Vermont Labor Relations Board to elect collective bargaining representatives under the Vermont Municipal Employee Relations Act (MERA). VSEA thereby sought to represent the employees within the State's Attorney's Offices (SAOs)—including deputy state's attorneys, victim advocates, and secretaries—in the counties of Chittenden, Essex, Franklin, Orange, Rutland, Windsor, Addison, and Windham. The Board

---

[1] Chief Justice Reiber was present for oral argument, but did not participate in this decision.

ultimately denied all eight petitions. We reverse the Board's decision, and remand the matter for the Board to proceed with the certification process.

¶ 2.  Some historical background is helpful in understanding how these petitions arose. As more fully explained below, the petitioned-for employees do not fall neatly within any of the state's labor relations acts; as a result, they have not previously been part of a collective bargaining unit. See 21 V.S.A. § 1724(a) (setting forth procedure for filing petition to form bargaining unit).

¶ 3.  The question on appeal is whether the employees covered by VSEA's eight petitions fall under MERA. More specifically, the issue is whether either the individual state's attorneys or the legislatively created Vermont Department of State's Attorneys and Sheriffs, or some combination thereof, are municipal employers.

¶ 4.  Only municipal employers and their employees may bargain collectively under MERA. See 21 V.S.A. § 1721 (stating, in relevant part, that MERA's purpose is "to prescribe the legitimate rights of both municipal employees and municipal employers in their relations with each other"); see also id. § 1725 (outlining collective bargaining procedure). MERA defines "[m]unicipal employee" as "any employee of a municipal employer, including a professional employee" with exceptions not relevant here. Id. § 1722(12). " 'Municipal employer' means a city, town, village, fire district, lighting district, consolidated water district, housing authority, union municipal district, or any of the political subdivisions of the State of Vermont which employs five or more employees as defined in this section." Id. § 1722(13). Because neither the state's attorneys nor the Department are enumerated, they must qualify as political subdivisions of the state for MERA to apply. The term "political subdivision" is not defined anywhere in MERA.

¶ 5.  Thus, an analysis of the definition of "municipal employer" raises two distinct sub-issues: (1) whether the individual state's attorneys, the Department, or a combination of the

2

two, "employ" the petitioned-for employees; and (2) if so, whether such employers may be considered political subdivisions of the state for purposes of MERA. For the reasons explained below, we conclude that each individual state's attorney that employs five or more employees is a municipal employer for purposes of MERA.

¶ 6.    As noted, the employees within the SAOs have never had collective bargaining representation. The SAOs, their various types of employees, and the Department defy simple classification for purposes of labor relations. Yet, untangling the web of constitutional mandates, statutory provisions, and actual practices that define their labor relationships is essential to deciding this appeal.

¶ 7.    The voters of each county in Vermont elect a single state's attorney, as required by Chapter II, Section 50 of the Vermont Constitution. Each state's attorney, in turn, has the sole authority to hire deputy state's attorneys, victim advocates, and secretaries,[2] all of whom serve at the pleasure of the state's attorney. See 13 V.S.A. § 5306 (victim advocates); 24 V.S.A. § 363 (deputies); 32 V.S.A. § 1185(b) (secretaries). Each type of SAO employee has different rights and oversight, as defined by various statutory provisions, which we discuss below.

¶ 8.    The Department, established under 24 V.S.A. § 367(a), consists of the fourteen state's attorneys and fourteen county sheriffs. The statute requires the state's attorneys to elect an Executive Committee composed of five of the state's attorneys. That committee, along with the Executive Committee of the Vermont Sheriff's Association, appoints an Executive Director—an exempt employee who serves at the pleasure of the committees. Id. § 367(a)-(b). As described below, the Executive Director is tasked with, among other things, preparing and submitting "all budgetary and financial materials . . . with respect to all State funds appropriated for all of the Vermont State's Attorneys and sheriffs." Id. § 367(c).

---

[2]    The petitions and the Board's opinion mention "administrative secretaries" as a separate category of employee, but the two titles have no statutory distinction, and VSEA conceded at oral argument that the two positions were the same for purposes of labor relations. For simplicity, we therefore refer only to "secretaries" in this opinion.

¶ 9. State's attorneys may consult with the Executive Director regarding potential dismissals of employees within their offices, but they retain the ultimate authority whether to discharge employees. Further, state's attorneys may change the caseloads, assignments, and other working conditions of deputy state's attorneys working in their office. Although 24 V.S.A. § 363 permits state's attorneys to "fix the[] pay" of their deputy state's attorneys "with the approval of the Governor," in practice, the Executive Committee's adoption of the State of Vermont Attorney Pay Plan currently establishes the pay. The attorneys, as well as the victim advocates and secretaries in the SAOs, are eligible to receive health insurance benefits through the State of Vermont health plans. They also receive retirement benefits from the state through the defined benefit or the defined contribution plans.

¶ 10. Secretaries provide administrative support to the state's attorneys, 32 V.S.A. § 1185(a), who have authority to adjust the secretaries' hours and other conditions of employment. The state's attorneys do not establish the secretaries' wages or benefits, however. Secretaries are categorized expressly by statute as state employees whose salaries are determined by the Commissioner of Human Resources and who receive the same benefits as state-classified employees, but who are not subject to the state classification system. Id. § 1185(b).

¶ 11. Victim advocates are supervised by the state's attorney of the office to which they are assigned. They are paid through funding by the Center for Crime Victim Services, which includes some federal funds. State's attorneys do not establish the wages of victim advocates, who are treated like classified state employees for purposes of pay and generally receive wage increases provided for in the state-VSEA collective bargaining agreement, though they are not covered by the agreement. State's attorneys control the victim advocates' hours and other conditions of employment.

¶ 12. As indicated, the Executive Director of the Department oversees the administration, budget, information technology, and many human resource services for the

4

SAOs, and also oversees the budget and many human resource services for the Sheriffs' offices. 24 V.S.A. § 367(c). The Executive Director drafts a proposed budget that includes wages and benefits for the deputy state's attorneys, victim advocates, and secretaries working in the SAOs and covers operating expenses for the SAOs.[3] The Director presents this proposed budget for the Governor's approval through the Department of Finance and Management. The budget is then presented to the Legislature as part of the entire state government budget. The Executive Director may challenge the Governor's budget determinations, however, and seek funding for the SAOs and Sheriff's offices' own priorities directly from the Legislature, with or without the Governor's approval. Once approved by the Legislature, the budget is provided to the Department as a lump sum, which is then divided among the counties. Additional expenses must be approved by the Executive Director, but the Director's denial of funds may be overturned by the Executive Committee. Id. § 367(d)(1). For example, if a deputy state's attorney wishes to retain and pay an expert witness for a case, the expense of the expert witness must be approved by the Executive Director.

¶ 13. The Executive Director is also involved in the legislative process: monitoring and providing input on legislation, testifying on legislation, and generally acting as an advocate for the SAOs and Sheriffs' offices. Further, the Executive Director administers the annual training program for SAO employees and has authority to adopt personnel regulations applicable to those employees.

¶ 14. With regard to the instant petitions, different state's attorneys responded differently. The state's attorneys of Franklin, Orange, Windsor, Addison, and Windham counties opposed the petitions. These state's attorneys took the position that the employees proposed by

---

[3] No statute mandates how health insurance and other benefits for deputy state's attorneys and victim advocates must be set. The evidence shows that, in practice, all three classes of SAO employees receive the same benefit options and state contributions to benefit plans as do state-classified employees. State's attorneys have no authority over the benefits of employees working in their offices.

5

VSEA to be included in the bargaining units in their respective counties are not employees covered by MERA. The Essex County state's attorney responded that he would voluntarily recognize VSEA as the representative of the Essex County employees, but he did not indicate his position on whether the employees were covered by MERA. The Rutland County State's Attorney deferred the question of MERA coverage to the Board. Finally, the Chittenden County State's Attorney responded that he agreed to Chittenden County employees voting in a consent election under MERA to decide whether they wished to be represented by VSEA.

¶ 15. The Board consolidated the eight petitions and invited briefing prior to an evidentiary hearing, which was held before a hearing officer on August 21, 2014. Only VSEA, the Chittenden County State's Attorney, and the state's attorneys of Franklin, Orange, Windsor, Addison, and Windham counties, collectively, filed briefs. The sole question at the hearing was whether MERA applies to employees covered by VSEA's eight petitions.

¶ 16. Before the Board, VSEA proffered two principal, alternative theories in support of its contention that the employees of the SAOs are covered by MERA. The first theory was that the fourteen SAOs, together with the Department, act either as a single employer or joint employers, thereby making them and their employees subject to MERA as a single statewide bargaining unit. The second theory, in the event the Board found that the employment relationship existed only at each county office, was that each state's attorney is a distinct municipal employer within MERA.

¶ 17. The state's attorneys of Franklin, Orange, Windsor, Addison, and Windham counties reiterated their position that the deputy state's attorneys and victim advocates cannot be covered by MERA because they serve at the pleasure of an elected official and thus are employees of the individual state's attorney for whom they work rather than of any "political subdivision" under MERA. They further argued that the SAO secretaries are state employees not covered by MERA.

6

¶ 18.    The Chittenden County State's Attorney took the position that its employees are covered by MERA because they are employed by a "political subdivision" of Vermont, pursuant to MERA's definition of "municipal employer."  Alternatively, the Chittenden State's Attorney argued that these employees are state employees covered by the bargaining provisions of the State Employees Labor Relations Act (SELRA), 27 V.S.A. §§ 902-1008.

¶ 19.    The Board did not agree fully with any of the parties' positions.  With respect to VSEA's joint-or-single-employer theory, the Board found that the Department is not a political subdivision of the State.    According to the Board, the Department's partial control over employment imbues the Department—as either a joint or singular employer—with a statewide scope, making it an entity of the state rather than a municipal employer under MERA.  As to the individual-SAO theory, although the Board found that certain mandatory bargaining subjects under MERA—namely, wages and benefits—are not within the control of individual state's attorneys, it rejected the position of some of the state's attorneys that the petitioned-for employees cannot be covered by MERA because they serve at the pleasure of an elected official.  The Board reasoned that the conditions of employment over which the state's attorneys do have control are insufficient to make the state's attorneys municipal employers.    The Board thus dismissed VSEA's petitions, concluding that the labor relations within the SAOs constitute hybrid situations that do not come within the purview of any of the Vermont labor relations statutes.  VSEA appeals, advancing essentially the same arguments as it did before the Board.

¶ 20.    On review of the Board's decision, "this Court defers to the Board in determinations made within the area of its expertise." Vt. State Emps.' Ass'n v. State, 151 Vt. 492, 493, 562 A.2d 1054, 1055 (1989).    " '[A]bsent compelling indication of error, interpretations of statutory provisions by the administrative body responsible for their execution will be sustained on appeal.' " Id. (quoting Vt. Camping Ass'n v. Dep't of Emp't & Training, 145 Vt. 630, 633, 497 A.2d 353, 355 (1985)).  "Nevertheless, this Court will reverse the Board's

7

decisions if they are clearly erroneous." In re Lilly, 173 Vt. 591, 592, 795 A.2d 1163, 1167 (2002) (mem.) (citing In re Merrill, 151 Vt. 270, 273, 559 A.2d 651, 653 (1988)). Here, the Board's interpretation of the statutory provisions at play cannot be sustained.

¶ 21.  We first consider the Board's analysis with respect to VSEA's individual-SAO theory.  The Board determined that the fact that the petitioned-for employees serve at the pleasure of the state's attorneys, who are elected officials, did not preclude them from being covered by MERA.  Yet, the Board ultimately concluded that the individual SAOs fell outside MERA's definition of municipal employer because MERA mandates negotiation over "the full panoply" of bargaining subjects—"wages, conditions, and other conditions of employment"— and state's attorneys cannot bargain over wages or benefits.  In other words, the Board held that if an employer and its employees cannot negotiate over all possible bargaining subjects, they cannot negotiate over any of them.  We agree with the Board's determination that employees of the individual state's attorneys could be covered by MERA despite the fact that they serve at the pleasure of an elected official, but disagree with the Board's interpretation of the law that an employer must have the ability to negotiate over all possible bargaining subjects to qualify as a municipal employer.

¶ 22.  Under MERA, "[c]ollective bargaining" is defined as "the process of negotiating in good faith the wages, hours, or conditions of employment between a municipal employer and the exclusive bargaining agent of employee."  21 V.S.A. § 1722(4) (emphasis added).  Further, the phrase "[w]ages, hours and other conditions of employment" is defined as "any condition of employment directly affecting the economic circumstances, health, safety, or convenience of employees but excluding matters of managerial prerogative."  Id. § 1722(17) (emphasis added). The fact that collective bargaining may involve bargaining over any condition of employment outside matters of managerial prerogative does not suggest that the collective bargaining must involve all conditions of employment.  Indeed, plugging the definition of "[w]ages, hours and

8

other conditions of employment" into the statutory description of "collective bargaining procedure" produces the following directive: "[T]he representatives of the municipal employer and the bargaining unit shall meet at any reasonable time and shall bargain in good faith with respect to [any condition of employment directly affecting the economic circumstances, health, safety or convenience of employees but excluding matters of managerial prerogative]." Id. § 1725(a). These provisions of MERA make clear that where a municipal employer has control over only some of the potential bargaining subjects, it nevertheless can and must negotiate, at minimum, with respect to those limited subjects.[4]

¶ 23. As noted, under current practice, the petitioned-for employees' basic benefits like health care and retirement are those provided to all state employees. Moreover, the wages of the deputy state's attorneys, as described above, are established in accordance with a State of Vermont Attorney Pay Plan adopted by the Department through its Executive Committee. There is no statutory direction for the Department to adopt either these benefits or this plan. Rather, the Department administers the plan, which is voluntarily and collectively adopted by the state's attorneys. Had they wished, the state's attorneys could have adopted a completely different scheme, including one in which each state's attorney set his or her own wages, with the Executive Director being limited to allocating funds from the global budget under the statutory mandate. The fact that the state's attorneys have agreed to a wage scheme cannot defeat either their status as employers under MERA or their obligation to bargain over wages.

¶ 24. Because of the Board's erroneous conclusion that the individual state's attorneys were not municipal employees, it never resolved the question of who is the employer when it addressed VSEA's single-or-joint-employer theory. The Board realized that under either the

---

[4] Such limited bargaining is not unusual. For example, employees of the federal government engage in collective bargaining under the Federal Labor-Management and Employee Act, 5 U.S.C. §§ 7101-7135, even though their right to bargain collectively is limited to conditions of employment and does not include wages and other economic benefits. Id. §§ 7102(2), 7103(14).

single-employer or joint-employer analysis, it would have to conclude that the Department, as an integral component of the alleged employer unit, is a "political subdivision" of Vermont in order for the whole employer unit to be subject to MERA. It reasoned that because the entities specifically referred to in MERA's definition of "[m]unicipal employer," 21 V.S.A. § 1722(13), all are organized on a less-than-statewide basis, the catchall term "other political subdivision of the State of Vermont" contained in § 1722(14) logically also must be limited to entities organized on a less-than-statewide basis, such as by county. Under this reasoning, the Department, which provides services to state's attorneys in all fourteen counties of Vermont, cannot fall within the definition of municipal employer. Therefore, under the Board's analysis, the alleged single or joint employer, viewed as the group of SAOs plus the Department, necessarily also falls outside that definition.[5]

¶ 25. We accept the Board's determination that if the Department is a component of the employer unit that employs the deputy state's attorneys, victim advocates, and secretaries, the whole employer unit is not a political subdivision of the state and thus cannot be subject to MERA. As the Board pointed out, none of the entities within MERA's definition of "[m]unicipal employer" have a statewide scope, and the word "subdivision" suggests an entity that does not have a statewide scope. This case therefore turns on whether the Department is part of the employer unit.

¶ 26. The issue of who is the employer is a case-by-case determination. The U.S. Supreme Court has explained that the terms "employee" and "employer," as used in the National

---

[5] The Board rejected VSEA's invitation to apply the definition of "political subdivision" found in the state elections statutes because, as it stated, elections law is unrelated to labor relations law. The Board acted within its discretion in limiting its construction of the term to consideration of the sections within the statute being considered. See Vt. Human Rights Comm'n v. State, 2012 VT 45, ¶ 5, 191 Vt. 485, 49 A.3d 149 ("When interpreting an undefined statutory term, we are guided by the canon of noscitur a sociis—'it is known by its associates.' "); cf. Vt. Camping Ass'n, 145 Vt. at 632-33, 497 A.2d at 355 (affirming Vermont Employment Security Board's decision to interpret "wages" in 21 V.S.A. § 1301(12) based on plain language of its statutory definition, rather than adopting federal interpretation).

Labor Relations Act, "carry with them more than the technical and traditional common law definitions. They also draw substance from the policy and purposes of the Act, the circumstances and background of particular employment relationships, and all the hard facts of industrial life." Nat'l Labor Relations Bd. v. E.C. Atkins & Co., 331 U.S. 398, 403-04 (1947). Where control over the various elements of employment is shared among multiple entities, the concepts of "joint employer" and "single employer" help determine who actually employs the petitioned-for employees. See Nat'l Labor Relations Bd. v. Browning-Ferris Indus., 691 F.2d 1117, 1122 (3d Cir. 1982).

¶ 27. The terms "joint employer" and "single employer" do not appear in MERA, but the Board has defined and used them previously. A "single employer" relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is actually only a single employer. Vt. State Colls. Faculty Fed'n/UPV AFT Local 3180, 30 V.L.R.B. 92, 112 (Oct. 7, 2008) (citing Browning-Ferris, 691 F.2d at 1122, http://vlrb.vermont.gov/sites/vlrb/files/AlchemyDecisions/Volume%2030/30VLRB92.pdf [http://perma.cc/M73R-8GTF]). In contrast, "joint employers" means there are separate legal entities that have chosen to jointly handle certain aspects of their employer-employee relationships. Id. at 113 (citing Browning-Ferris, 691 F.2d at 1122). As previously applied by both the National Labor Relations Board and the Vermont Labor Relations Board, these terms widen the scope of existing bargaining groups to include previously unrepresented employees who are managed under a related employer structure. See, e.g., id. (determining whether to add instructors at various institutions affiliated with Vermont State Colleges to existing Vermont State Colleges faculty bargaining unit). In this case, however, we are applying those concepts to entities—the fourteen SAOs and the Department—none of which has ever been in collective bargaining relationship with employees. We do not purport to expand the scope of the "single employer" or "joint employer" theories; we merely look to the principles underlying them to aid

11

our analysis of the labor relations among the SAOs, the Department, and the petitioned-for employees.

¶ 28. The critical factors in determining whether there is a "single employer" relationship are: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." See id. (citing Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965)). No one factor is controlling, although the first three factors, particularly centralized control over labor relations, are generally considered more compelling than the fourth. Id. (citing Canned Foods, Inc., d/b/a Grass Valley Grocery Outlet, 332 N.L.R.B. 1449, 1461 (2000)).

¶ 29. The first factor, functional integration of operations, exists to some extent in this case as the result of the statutory scheme that gives the Department's Executive Director—who serves at the pleasure of state's attorneys' and sheriffs' Executive Committees within the Department—certain responsibilities with respect to the procurement and budgetary management of funds from the Legislature for the SAOs. See 24 V.S.A. § 367(c). In addition, expenditures of funds within the individual SAOs for prosecutorial activities, such as expert witness fees, as well as other expenses, are generally run through the Department.

¶ 30. It is important to keep in mind, however, that each state's attorney is the person statutorily authorized to hire and fire the petitioned-for employees in his or her office, and further, is specifically authorized to hire as many deputy state's attorneys "as necessary for the proper and efficient performance of his or her office." Id. § 363. In that regard, there was testimony before the hearing officer that when a recent legislatively approved budget allotted funds for hiring two additional deputy state's attorneys, the fourteen state's attorneys agreed among themselves which offices should get the new hires. Moreover, although the Department pays for and organizes annual job training for all of the SAO employees across the state, the

individual state's attorneys alone supervise the day-to-day activities of the petitioned-for employees working in their respective offices. In short, although there is some functional integration of operations between the Department and the individual SAOs, the individual state's attorneys are the sole employer with respect to the day-to-day operations of their offices.

¶ 31. This fact is reinforced in considering the second and most important factor—centralized control of labor relations. Although the Department employs a full-time personnel director who administers payroll and keeps track of annual leave accruals for all of the SAOs' employees, it is the state's attorneys themselves that supervise the employees' daily activities, control work assignments, promulgate work rules and nearly all conditions of employment, assess their employees' work performance, and initiate any necessary disciplinary procedures. The Department's role is limited to handling certain administrative support functions; it has little, if any, direct or active involvement in the daily operations of, or supervision over, the petitioned-for employees.

¶ 32. Similarly, with regard to the third factor—common management—the Department takes on some administrative functions in its supportive role, but is not involved in the management of the work of the SAOs. As noted, the individual state's attorneys decide who to fire and who to hire when a position opens up in their office, and they manage employees' assignments, office conditions, as well as other aspects of day-to-day work. The fourth factor has little relevance in the public employment context.

¶ 33. By the same token, the critical factors identified by the Board with respect to a "joint employer" analysis "are supervision of employees' daily activities, authority to hire and fire or otherwise discipline employees, the promulgation of work rules and conditions of employment, and work assignment." Vt. State Colls. Faculty, 30 V.L.R.B. at 113-14 (citing G. Hielman Brewing Co., Inc. v. Nat'l Labor Relations Bd., 879 F.2d 1526, 1531 (7th Cir. 1989)).

As explained above, these factors do not favor designating the state attorneys and the Department as joint employers.

¶ 34. In summary, for the reasons stated, we uphold the Board's determination that the Department is not an employer of the petitioned-for employees in conjunction with the individual state's attorneys. On the other hand, the individual state's attorneys, who are statutorily authorized county officers under Chapter 5 (County Officers; Powers and Duties) of Title 24 (Municipal and County Government), are municipal employers under MERA to the extent that they "employ[] five or more employees as defined" in MERA. 21 V.S.A. § 1722(13).[6] The fact that they may be unable to bargain over the full scope of employment issues with respect to the petitioned-for employees in their offices does not mean that they are not municipal employers under MERA. MERA defines a "[m]unicipal employee" as "any employee of a municipal employer, including a professional employee"—with exceptions not relevant here. Id. § 1722(12). Each of the groups of petitioned-for employees fit within that definition, given our determination that the individual state's attorneys are municipal employers.

¶ 35. We recognize that the secretaries are to be considered "State employees paid by the State, and shall receive those benefits available to other classified State employees who are similarly situated," but the same statutory subsection provides that the secretaries are not subject to the rules regarding classification of state employees and that they "shall be hired by and shall serve at the pleasure of the State's Attorney." 32 V.S.A. § 1185(b). In short, although the provision requires that the secretaries be paid as state employees, it also recognizes that they will be hired by and work for a county employer, which makes them a municipal employee under MERA.

¶ 36. This makes sense as a matter of public policy. In addition to the State Labor Relations Act, 21 V.S.A. §§ 1501-1623, which does not apply to public employees and

---

[6] The record is not entirely clear as to whether all of the SAOs employ five or more employees. On remand, the Board will have to make that determination.

14

government entities, see id. § 1502(6)(7), the Legislature has enacted several other labor relations acts applicable to various public employees and/or government entities. See 3 V.S.A. §§ 901-1008 (state employees); Id. §§ 1010-1043 (judiciary employees); 16 V.S.A. §§ 1981-2028 (teachers and administrators); 21 V.S.A. §§ 1631-1644 (direct support providers); 21 V.S.A §§ 1721-1736 (municipal employees); 33 V.S.A. §§ 3601-3617 (early care and education providers). Plainly, the Legislature has endeavored to act comprehensively in covering government employees, including those working for local government entities such as the SAOs. Among the stated purposes of MERA are to "to protect the right of individual employees to self-organization" and "to allow individuals to form, join or assist employee organizations and to bargain collectively." 21 V.S.A. § 1721. As employees of municipal employers, the petitioned-for employees fall under the protection of this statute.

The November 3, 2014 decision of the Vermont Labor Relations Board dismissing the eight petitions is reversed, and the matter is remanded to the Board to determine which of the SAOs employ more than five employees and, with respect to those offices, to proceed with certification as set forth in 21 V.S.A. § 1724(c)-(h).

FOR THE COURT:

_____
Associate Justice

15