NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 72

No. 2019-075

In re Grievance of Michael Welch            Supreme Court
(Vermont State Employees' Association, Appellant)

                                    On Appeal from
                                    Labor Relations Board

                                    December Term, 2019

Richard W. Park, Chair

Timothy Belcher, Vermont State Employees' Association, Montpelier, for Appellant/
  Cross-Appellee.

Thomas J. Donovan, Jr., Attorney General, and Laura C. Rowntree, Assistant Attorney General,
  Montpelier, for Appellee/Cross-Appellant State.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Wesley, Supr. J. (Ret.),
                 Specially Assigned

¶ 1. **EATON, J.** Both the Vermont State Employees' Association (VSEA) and the State of Vermont appeal from a Labor Relations Board decision sustaining and dismissing in part a grievance filed by the VSEA on behalf of grievant Michael Welch, an employee of the Vermont Department of Liquor Control (DLC). The grievance alleged ongoing violations by the State of the parties' collective bargaining agreement (CBA). We affirm in part and reverse and remand in part.

¶ 2. Between 2007 and 2015, grievant worked as a state transport deputy sheriff with the Orange County Sheriff's Department (OCSD). In 2015, he was hired by the DLC as a liquor-control investigator. The State determined that while working as a transport deputy, grievant had

been a county employee, and therefore he was not eligible for salary and leave benefits available under the CBA to certain prior State employees beginning another State job. The VSEA then filed the instant grievance[1] alleging that the State violated the CBA by failing to pay grievant at the contractually required step and failing to calculate his leave accrual at the contractually required rate. After considering the parties' positions, the Board concluded that, for purposes of compensation and benefits, transport deputies are State employees exempt from the classified service. As a result, it found that the State violated Articles 30, 31, and 62 of the CBA in denying grievant compensation and leave benefits to which he was entitled. However, the Board determined that the State did not violate Article 45 because the promotional pay rate available thereunder applied only to those transferring between positions in the State classified service.

¶ 3. The State appeals the former conclusions, and the VSEA appeals the latter. In doing so, both challenge the Board's interpretation of the terms of a collective bargaining agreement, a matter at the heart of the Board's special expertise. In re Grievance of VSEA, 2014 VT 56, ¶ 21, 196 Vt. 557, 99 A.3d 1025 (applying "deferential standard of review" where Court's "main task [on] appeal is to review the Board's interpretation of terms of the collective bargaining agreements between VSEA and the State"). On appeal from such a decision, we therefore review the Board's findings and conclusions with substantial deference. In re Jewett, 2009 VT 67, ¶ 25, 186 Vt. 160, 978 A.2d 470 (deferring to Board's "construction of the collective bargaining agreement, given [its] expertise in that area"). As a result, it is necessary to recount the factual findings supporting the Board's decision in some depth.

---

[1] " 'Grievance' means an employee's, group of employees', or the employee's collective bargaining representative's expressed dissatisfaction, presented in writing, with aspects of employment or working conditions under a collective bargaining agreement . . . that has not been resolved to a satisfactory result through informal discussion with immediate supervisors." 3 V.S.A. § 902(14).

2

¶ 4.     The Board found the following relevant facts.  Each of Vermont's fourteen counties elects a state's attorney and a sheriff.  See Vt. Const. ch. II, § 50 (providing that sheriffs and state's attorneys "shall be elected by the voters of their respective districts as established by law").  These elected officials may, in turn, staff their offices with nonelected officials.  State's attorney's offices employ deputy state's attorneys, see 24 V.S.A. § 363, administrative secretaries, see 32 V.S.A. § 1185(a), and victim advocates, see 13 V.S.A. § 5306.  Sheriff's departments employ deputy sheriffs, see 24 V.S.A. § 290(a), and transport deputy sheriffs, see id. § 290(b).  Each of these positions is subject to different employment rights and oversight as defined by the applicable statutory provision, but all belong to "the so-called special groups," which may elect to participate in state health-, dental-, and life-insurance, and retirement-benefit plans.  The Department of State's Attorneys and Sheriffs (DSAS) is a part of state government which provides "centralized support services" to sheriff's departments and state's attorney's offices with respect to such employees, including budgetary planning, training, and office management.  24 V.S.A. § 367(c).

¶ 5.     In 2007, the OCSD hired grievant, who it had employed as a part-time deputy sheriff, as a full-time transport deputy sheriff.  Transport deputies are responsible for transporting persons in the custody of the State or its agents between facilities and courts within and outside Vermont.  In addition to their transport-related responsibilities, they also perform general law-enforcement duties within their respective counties as needed.  Pursuant to 24 V.S.A. § 290(b), transport deputies are paid by the State.  However, they work under the general supervision of the county sheriff, with little direct supervision.

¶ 6.     Upon being hired as a transport deputy, grievant received a packet of materials from DSAS. Several of the materials indicated that grievant was receiving them as a State employee or an exempt State employee, and the packet included multiple personnel policies and procedures applicable to State employees, including some relating to sick and annual leave.  Grievant was

3

issued a State identification (ID) card, State employee number, and State email address. The State identified itself to the Internal Revenue Service as grievant's employer.

¶ 7. In April 2015, grievant applied for a position as a liquor-control investigator with the DLC. Both grievant and the DLC had questions concerning the compensation and benefits that would be extended to grievant should he be hired into the position. Upon inquiry, representatives of the Labor Relations Division of the Department of Human Resources (DHR) advised grievant that a recent Board decision regarding the administrative secretaries employed by state's attorneys' offices had clarified that transport deputies are county employees, and, as a result, if grievant were hired, he would be "processed as a new hire" and would not receive the contractual benefits afforded those hired from another State position. See VSEA Petitions for Election, Nos. 14-30, 14-31, 14-32, 14-33, 14-34, 14-35, 14-48, 14-49, 33 VLRB 119, 2014 WL 5822856 (Vt. Lab. Rel. Bd. Nov. 3, 2014).

¶ 8. The DLC subsequently offered grievant the position, and he accepted. Effective June 1, 2015, he began his new employment. As a result of being processed as a new hire, grievant's pay decreased from $21.72 per hour in his prior position to $20.43 per hour in his new role. His sick- and annual-leave accrual rates fell from 4.62 to 4.27 hours per pay period. When grievant applied for prior-service credit on the basis of his employment as a transport deputy, the DHR denied his application for the same reason set forth in the earlier email: under the Board's recent decision regarding administrative secretaries, the State concluded grievant was previously employed by Orange County, not the State, and therefore did not qualify for reemployment benefits under the CBA.

¶ 9. One month later, this Court reversed the Board ruling relied on by the DHR in support of that conclusion. See In re Election Petitions, 2016 VT 7, 201 Vt. 123, 136 A.3d 213. A DHR employee emailed grievant to advise that the State read the Court's opinion to designate transport deputies as municipal employees, and, as a result, the State had not changed its position

4

as to grievant's reemployment rights under the CBA. The VSEA then filed this grievance, alleging an ongoing violation of the applicable CBA[2] through the State's failure to recognize grievant's prior employment as State service.

¶ 10.  As discussed supra, ¶ 3, we presume decisions within the scope of the Board's expertise to be "correct, valid and reasonable." Vt. State Emps. Ass'n v. State, 2009 VT 21, ¶ 19, 185 Vt. 363, 971 A.2d 641.  We will uphold the Board's factual findings "so long as credible evidence fairly and reasonably supports them, even if we would not have reached the same decision," reversing only for clear error.  Grievance of VSEA, 2014 VT 56, ¶ 22 ("Such findings will stand even if there exists substantial evidence contrary to the challenged findings." (quotation omitted)).  If these findings, taken as a whole, justify the Board's ultimate conclusion, we will affirm.  See In re West, 165 Vt. 445, 448, 685 A.2d 1099, 1102 (1996) ("Interpretations of collective bargaining agreements are within the particular expertise of the Board, and we review such interpretations with great deference to the Board's expertise.").

¶ 11.  Bearing in mind that this standard of review calls for "an even lighter touch than . . . a typical contract dispute," we nonetheless review the Board's interpretation of the CBA pursuant to traditional principles of contract law.  In re Kelley, 2018 VT 94, ¶ 12, 208 Vt. 303, 198 A.3d 44.  Accordingly, we look first to the plain language of the agreement to discern the parties' intent.  West, 165 Vt. at 450, 683 A.2d at 1103.  Where that language is clear and unambiguous, we are obligated to enforce it as written.  Id.  To address the threshold question of whether an ambiguity exists in a CBA, "limited extrinsic evidence, including the circumstances surrounding

---

[2]  In its order, the Board referenced the "the collective bargaining agreement between the State and VSEA for the Non-Management Bargaining Unit, effective July 1, 2016, to June 30, 2018."  The VSEA indicates that "[t]his case must be decided by reference to the . . . contract in place on June 1, 2015," and has filed with its printed case only the collective bargaining agreement between the State and the VSEA for the nonmanagement bargaining unit effective July 1, 2014 to June 30, 2016.  There is no allegation that the material provisions of these two agreements differ. We rely on the evidence in the record.

5

the making of the agreement as well as the object, nature and subject matter of the writing" may be brought to bear. In re Spear, 2014 VT 57, ¶ 15, 196 Vt. 517, 99 A.3d 618 (quotation omitted). If the language is thereafter found ambiguous as a matter of law, the question of the parties' intent must be put to the trier of fact. Kelley, 2018 VT 94, ¶ 11.

## I. Articles 30, 31, and 62

¶ 12. We turn first to the State's cross-appeal. Article 62 of the CBA is entitled "Reemployment." It provides that a State employee who, following termination or transfer of prior employment "as a permanent status employee (i.e., having successfully completed an original probationary period) or exempt employee with a satisfactory rating," has not been dismissed for cause and is reemployed by the State within two years, "shall," upon completion of the applicable probationary period, "have the length of previous classified and/or exempt service re-credited for the purpose of subsequent leave accrual." Article 30 establishes annual-leave accrual rates and accumulation caps that increase in proportion to a classified employee's years of State service. Similarly, Article 31 sets forth sick-leave accrual rates that increase in proportion to a classified employee's years of State service. Therefore, employees hired by the State who satisfy the provisions of Article 62 receive "reemployment" credit for prior State service in establishing their rate of annual- and sick-leave accrual. The disputed question here is whether grievant's prior employment as a transport deputy was either "permanent status" or "exempt" employment under Article 62 such that he was entitled to retain his sick- and annual-leave accrual rates under Articles 30 and 31.

¶ 13. Before the Board, the State argued that transport deputies are county employees, while the VSEA maintained that they are either exempt State employees or jointly employed by the State and the relevant county sheriff's department. To determine whether transport deputies are "permanent status" or "exempt" employees under Article 62, the Board first looked to 24 V.S.A. § 290(b), the statutory provision by which the job is created. Applying typical statutory-

6

interpretation principles to determine whether employment pursuant to § 290(b) was State employment for the purposes of the CBA, the Board read § 290(b) in pari materia with § 290(a), the other subsection within that provision relating to nonelected employees within a county sheriff's department.[3] See In re Grievance of Danforth, 174 Vt. 231, 238, 812 A.2d 845, 851 (2002).

¶ 14. The Board held that § 290(a) and (b) clearly create "two distinct categories of deputy sheriffs." It found significant that while the deputy sheriffs described in § 290(a) are designated "county employees for all purposes," no such clause was applied to the transport deputies described in § 290(b). On this basis, it concluded that transport deputies are not county employees for all purposes, but found that this did not lead inexorably to the conclusion urged by the VSEA—that transport deputies were State employees for all relevant purposes—noting that the VSEA had not offered "other evidence warranting such a conclusion."

---

[3] The two subsections read:

> (a) A sheriff's department is established in each county. It shall consist of the elected sheriff in each county, and such deputy sheriffs and supporting staff as may be appointed by the sheriff. Full-time employees of the sheriff's department, paid by the county, shall be county employees for all purposes but shall be eligible to join the State Employees Retirement System, provided the county shall pay the employer's share. . . .

> (b) Full-time deputy sheriffs whose primary responsibility is transportation of prisoners and persons with a mental condition or psychiatric disability shall be paid by the State of Vermont. The appointment of such deputies and their salary shall be approved by the Governor or his or her designee. The Executive Committee of the Vermont Sheriffs Association and the Executive Director of the Department of State's Attorneys and Sheriffs shall jointly have authority for the assignment of position locations in the counties of State-paid deputy sheriffs and shall review the county location assignments periodically for efficient use of resources.

24 V.S.A. § 290 (emphasis added).

¶ 15.  Because the VSEA alleged, in the alternative, that grievant was jointly employed by the OCDS and the State, the Board concluded that it must "examine whether a 'joint employer' relationship exists here."  To do so, it looked to federal case law distinguishing single- and joint-employer relationships.  See, e.g., Radio & Television Broad. Technicians Local Union 1264v. Broad. Serv. of Mobil, Inc., 380 U.S. 255, 256 (1965); NLRB v. Browning-Ferris Indus. of Pa., 691 F.2d 1117 (3d Cir. 1982).  After observing that determination of whether an entity is a joint employer is "essentially a factual issue," the Board applied the factors it had drawn from the case law to its findings.

¶ 16.  First, it noted that while the State and the OCSD were distinct entities operating separately for many purposes, some aspects of the employer relationship with transport deputies were handled by the sheriff, and others by the State.  Significantly for purposes of the reemployment rights at issue, the Board found that the State controlled "[m]ajor components of compensation and benefits for State Transport Deputy Sheriffs."  It observed that, upon being hired in 2007, grievant received a packet of materials from DSAS, a part of the State government; some of the materials indicated that grievant was receiving them as a State employee or exempt State employee.  The packet included a document entitled "State of Vermont Personnel Policies and Procedures."  These policies and procedures, some of which related to sick and annual leave, applied to State employees.  The Board also observed that grievant had been assigned a State employee number and State email address, as well as being issued a State ID card.  Further, the State had reported to the Internal Revenue Service that it was grievant's employer.  On this basis, the Board concluded that the State and the OCSD jointly employed grievant while he was a transport deputy, and that those portions of the employment relationship involving compensation and benefits were controlled by the State.  Specifically, the Board concluded that "grievant was an exempt state employee with respect to compensation and benefits when he was employed as [a] state transport deputy sheriff."

¶ 17.   The Board then turned to the State's rejoinder: that transport deputies could not be exempt State employees as argued by the VSEA because they were not listed among the categories specifically exempted from the State classified service in 3 V.S.A. § 311(a). Under § 311(a), all State employees are members of the "classified service," subject to enumerated exemptions or "as otherwise provided by law." The Board held that "[t]he provisions of 24 V.S.A. § 290 relating to deputy sheriffs, taken together with the other evidence discussed above, indicate that it is otherwise provided by law that State Transport Deputy Sheriffs are exempt state employees for purposes of compensation and benefits."

¶ 18.   Because the Board found that grievant was an exempt State employee for purpose of wages and benefits, it held that under Article 62 he was entitled to reemployment credit upon his successful completion of his probationary period with the DLC, and the State therefore erred when it declined to grant him prior-service credit for purposes of annual- and sick-leave accrual as set forth in Articles 30 and 31. It concluded that the appropriate remedy for the State's violation of these provisions of the CBA was retroactive adjustment of his annual- and sick-leave balances from the time he completed his probationary period as a liquor-control investigator.

¶ 19.   On appeal, the State argues that the Board's conclusion was in error because the Board inappropriately grafted a joint-employer analysis into 3 V.S.A. § 311. In the alternative, it contends that even if the joint-employer analysis was appropriately applied in this scenario, the Board conducted it incorrectly because it lent "unnecessary credence" to documents grievant received from the State upon his employment as a transport deputy, and because the Board failed to distinguish this Court's conclusion in In re Election Petitions, 2016 VT 7, ¶ 35, a case in which we held that the administrative secretaries employed by state's attorneys were "municipal employees" under the Vermont Municipal Employee Relations Act (MERA).

¶ 20.   Before addressing the State's argument as to 3 V.S.A. § 311, we make note of the parties' shared assumption that, if transport deputies are State employees for any purpose, they are

9

exempt from the classified service. Article 62 provides reemployment benefits to certain State employees with a history of "employment as a permanent status employee . . . or exempt employee with a satisfactory rating." "Permanent status" is "that condition which applies to an employee who has completed an original probationary period and is occupying a permanent classified position." "Exempted service positions" are those "positions excluded from the classified service by statute." Section 311(a) creates a binary system: all permanent State employees are members of the classified service unless they are exempted therefrom by a provision of law. Although the Board found that grievant was an exempt State employee for purposes of wages and benefits, Article 62 applies equally to State employees holding permanent positions in the State classified service. Thus, the parties' assumption that grievant was not a member of the classified service prior to his employment with the DLC is an issue beyond the scope of this appeal, and we express no opinion as to its accuracy. The operative question here is whether transport deputies were State employees for purposes of Article 62 between 2007 and 2015.

¶ 21. The State begins its argument by pointing out that the purpose of 3 V.S.A. § 311 is to distinguish between exempt personnel and the classified service, and not to "introduce entirely new categories of State employee[s]." As set forth above, refuting grievant's characterization as an exempt employee does not obviate the possibility that he was nonetheless entitled to reemployment benefits under Article 62 as a member of the classified service. Moreover, the argument is unavailing because the Board did not use § 311 as "a conduit for a joint employment analysis" or to create a new category of State employee, as the State contends. Rather, the Board addressed § 311 to rebut the State's own argument that transport deputies could not be considered exempt State employees because they were not listed among the exemptions in § 311(a), correctly pointing out that § 311(a) does not include an exhaustive list of exemptions because employees may be exempt as "as otherwise provided by law." Together with its factual findings, the Board relied on 24 V.S.A. § 290(b), the provision creating the job in question, and not 3 V.S.A. § 311(a),

10

to determine that transport deputies were State employees with respect to compensation and benefits. The portion of the Board's finding that § 311(a) can be read to support is the finding that transport deputies were exempt State employees for purposes of compensation and benefits, a conclusion irrelevant to the issue at hand.

¶ 22. Because the transport-deputy position is created by statute, it was well within the Board's discretion to look to the language of that statute in determining whether the drafters of the CBA intended that those in grievant's position be designated prior State employees, triggering the provisions of Article 62. See In re Gregoire, 166 Vt. 66, 72, 689 A.2d 431, 435 (1996) ("Substantial deference must be accorded the Board's construction of collective bargaining agreements."). The Board chose to read 24 V.S.A. § 290(b) by juxtaposing it with § 290(a), since the latter was the only other provision within that section relating to the sheriff's employment of other nonelected officials. Section 290(b) singles out full-time transport deputies paid by the State, but does not employ the language used in § 290(a) to designate other full-time employees of the sheriff's department "county employees for all purposes." Although the Board relied on statutory-interpretation principles in construing § 290(b), it did so to determine whether grievant's prior employment satisfied Article 62's requirements. The Board's resulting interpretation of the CBA was well within its broad discretion. See, e.g., Clymer v. Webster, 156 Vt. 614, 625, 596 A.2d 905, 912 (1991) (observing that expression of one thing may be construed to reveal exclusion of another "when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment" (quotation omitted)).

¶ 23. The State also argues that the Board erred in applying the joint-employer analysis here, arguing that in In re Election Petitions, 2016 VT 7, this Court confined the scope of such reliance. In that case, the question was whether the administrative secretaries employed by state's

11

attorney's offices pursuant to 32 V.S.A. § 1185(b) were municipal employees eligible to elect collective-bargaining representatives under MERA. In re Election Petitions, 2016 VT 7, ¶ 3. Observing that the secretaries' hours and other conditions of employment were controlled by the employing state's attorney, we noted that the secretaries were nonetheless "categorized expressly by statute as state employees whose salaries are determined by the Commissioner of [DHR] and who receive the same benefits as state-classified employees, but who are not subject to the state classification system," and the employing state's attorney therefore was not responsible for establishing the secretaries' wages or benefits. Id. ¶ 10. We indicated that "[w]here control over the various elements of employment is shared among multiple entities, the concepts of 'joint employer' and 'single employer' help determine who actually employs" the employees in question." Id. ¶¶ 26, 35 (concluding that while secretaries are statutorily designated as "State employees," they are also municipal employees).

¶ 24. Although we did not thereby "purport to expand the scope of the 'single employer' or 'joint employer' theories," neither did we purport to confine them. Id. ¶ 27. Rather, we found the principles underlying the theories a helpful aid in analyzing the complex labor relations among the State and a municipal officer where the rights and responsibilities of an employer were shared between the two entities and a joint-employer relationship was alleged. Id. In this case, the Board was charged with determining whether grievant was correct in alleging that state transport deputies are jointly employed by the State with respect to wages and benefits. The Board again acted well within its broad discretion in determining that the principles underlying the joint-employer analysis—found instructive in In re Election Petitions—had similar utility in the analogous situation presented here. See Kelley, 2018 VT 94, ¶ 12. In re Election Petitions thus supports, rather than undermines, the mode of analysis applied by the Board here.

¶ 25. Having determined that the joint-employer analysis was appropriately applied, we turn to the State's alternative argument that the Board erred in how it applied that analysis here.

The State first contends that the Board incorrectly relied on various facts—including the packet of materials sent to grievant upon his employment as a transport deputy in 2007 and the fact that the State represented that it was grievant's employer for federal taxation purposes—to support the conclusion that he was employed by the State, observing that these documents were created pursuant to self-limiting statutes regarding retirement, benefits, and federal tax law, which did not create employment relationships. However, this argument ignores the reality that "[t]he Board's findings will withstand appellate review if they are supported by more than a mere scintilla of evidence and are not clearly erroneous." Rosenberg v. Vt. State Colls., 2004 VT 42, ¶ 9, 176 Vt. 641, 852 A.2d 599 (mem.). As set forth supra, ¶ 16, the Board considered multiple facts with respect to its joint-employer analysis, including that the State issued grievant a State employee number, email address, and ID card. The State does not challenge these findings, which are neither a "mere scintilla of evidence" nor "clearly erroneous." Rosenberg, 2004 VT 42, ¶ 9; see also Grievance of VSEA, 2014 VT 56, ¶ 22 (observing that unless clearly erroneous, Board's "findings will stand even if there exists substantial evidence contrary to the challenged findings"). As a result, we need not reach the merits of the State's argument that the Board should not have relied on the other facts it considered.

¶ 26. The State also alleges that the outcome of In re Election Petitions, 2016 VT 7, ¶ 34, militates in favor of a different result with respect to the joint-employer analysis, since we explained there that compensation was not a dispositive factor. The State further noted that of all of the positions within the county offices, transport deputies and secretaries are the most similar, because both are paid by the State and designated by statute as not county employees for all purposes, leading to a conclusion that transport deputies should also be classified municipal employees under In re Election Petitions. This argument fails for two reasons. First, regardless of the similarities between administrative secretaries and transport deputies, "[t]he issue of who is the employer is a case-by-case determination." Election Petitions, 2016 VT 7, ¶ 26 (holding

13

municipal entity was employer for purposes of MERA). Second, a close reading of the Board's decision does not support the conclusion that it treated the fact that transport deputies are paid by the State as dispositive with respect to the joint-employer analysis. We held in In re Election Petitions that although the statute "requires that secretaries be paid as state employees, it also recognizes that they will be hired and work for a county employer, which makes them a municipal employee under MERA." Id. ¶ 35. Similarly, the Board recognized here that although State Transport Deputies work for a county employer, they are paid as State employees. In re Election Petitions does not foreclose the result reached by the Board here.

¶ 27. The Board acted within its discretion when it concluded that grievant's prior employment as a transport deputy was State service, and that the State had violated Articles 30, 31, and 62 of the CBA in failing to afford grievant benefits and compensation at the rate required by that prior service.

## II. Article 45

¶ 28. We turn now to the VSEA's appeal from the Board's determination that only members of the classified service entering another position in the classified service of a higher pay grade are eligible for promotion pursuant to Article 45 of the CBA.

¶ 29. Under Article 45,

> upon promotion, upward reallocation or reassignment of a position to a higher pay grade, an employee covered by this Agreement shall receive a salary increase by being slotted into that step of the new pay grade which would reflect an increase of at least five percent (5%) over the salary rate prior to promotion.

To interpret this provision, the Board looked to the agreement's appendix, which defines "promotion" as "a change of an employee from a position of one class to a different position of another class assigned to a higher pay grade." The Board then found "pertinent" the definition of "classified position," which, as used in the CBA, means "a position in the State classified service which is assigned to a class and appointment to which is made in accordance with merit

14

principles." On this basis, the Board held that Article 45 only applies to employees "mov[ing] from one position in the classified service to another position in the classified service of a higher pay grade." Therefore, it concluded that the State did not violate the provision because it had determined that grievant was "an exempt state employee with respect to compensation and benefits when he was employed as [a] state transport deputy sheriff."

¶ 30. The VSEA argues that the Board's conclusion is incorrect because, rather than the definition of "classified position," it should have looked to the CBA's definition of "position": "a group of current duties and responsibilities normally requiring the full-time or part-time employment of only one (1) person." We agree. The CBA is unambiguous. See Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). The definition of "classified position" was not implicated by the definition of "promotion." To shed light on the phrase "position of one class," the Board should have looked to the separate definitions of "position" and "class" rather than the definition of "classified position." The CBA defined "class" as "one (1) or more positions sufficiently similar as to the duties performed, degree of supervision exercised or received, minimum requirements of training, experience, or skill, and such other characteristics that the same title, the same test of fitness, and the same pay grade may be applied to each position." Because the CBA is not limited to classified employees, and Article 45 refers only to "an employee covered by this agreement," resort to the correct definitions leads to the conclusion that a position may be assigned to a class for purposes of determining pay grade without being part of the classified service. Thus, despite our deferential review, we must reverse as unsupportable the Board's determination that grievant was not covered by Article 45 of the CBA. See Grievance of Gorruso, 150 Vt. at 143, 549 A.2d at 634 (noting substantial deference but nonetheless reversing where "we find the Board's construction of the [CBA] to be

15

unsupportable").  Accordingly, the matter is remanded for calculation of the amount that grievant

is owed under Article 45 of the CBA.

Affirmed as to Articles 30, 31, and 62, reversed as to Article 45, and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice